IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | &#124; | |
| Plaintiff, | &#124; | Case No.: |
| | &#124; | In Admiralty |
| v. | &#124; | |
| | &#124; | |
| PATRIOT MARINE, LLC, | &#124; | |
| | &#124; | |
| Defendant. | &#124; | |
| _____ | &#124; | |

## COMPLAINT

Plaintiff United States of America alleges as follows:

## NATURE OF THE ACTION

1.      This action is brought by the United States in accordance with the Oil

Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701-2761, to recover removal costs

arising from the clean-up and removal of oil discharged by the M/V OCEAN KING into

the waters of Great Harbor, Woods Hole, Massachusetts, on or about January 20-21,

2018.

2.      Federal oil spill removal actions may be financed through the Oil Spill

Liability Trust Fund (the Fund). *See* 26 U.S.C. §§ 4611 and 9509.  Under OPA Section

1012(a), 33 U.S.C. § 2712(a), the Fund can be used, *inter alia*, for the payment of federal

and state removal costs; certain claims against the Fund related to uncompensated

removal costs; and certain federal administrative, operational and personnel costs and

expenses under OPA. As will be shown, the Fund was used to pay for the removal of oil

from the navigable waters of Great Harbor following the oil spill.

3.     The United States also seeks a declaratory judgment on liability for removal costs and damages against the Defendant, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), and OPA Sections 1002(a), 1005, 1015, and 1017(f)(2), 33 U.S.C. §§ 2702(a), 2705, 2715, and 2717(f)(2), that is binding in this action and will be binding on any subsequent action or actions against the Defendant, for all removal costs, natural resource damages, and interest resulting from the oil spill.

4.     With respect to natural resource damages, the United States seeks a declaratory judgment under Section 1017(f)(2) that addresses only the elements of liability under Section 1002(a) of OPA that apply in common with liability for removal costs and liability for natural resource damages.  The United States is not seeking an award of natural resource damages in this action, nor is it seeking declaratory judgment on what injury, destruction, or loss of natural resources has occurred as a result of the unlawful discharge of oil by the Defendant.  Any such injury to, destruction of, or loss of natural resources and the damages that should be awarded are reserved for determination in a subsequent action or actions under Sections 1015(c) and 1017(f) of OPA, 33 U.S.C. §§ 2715(c), 2717(f).

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter and over the parties pursuant to 33 U.S.C. § 2717(b), and 28 U.S.C. §§ 1331, 1333 and 1345.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 33 U.S.C. § 2717(b).

7.      Authority to bring this action is vested in the United States Department of Justice pursuant to 28 U.S.C. §§ 516 and 519.

8.      This action includes an admiralty and maritime claim against the Defendant, within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

## PARTIES

9.      Defendant Patriot Marine, LLC ("Patriot Marine") is a limited liability company that was organized in Massachusetts in 2005. The company is engaged in marine construction and dredging.  At the time of the matters at issue in this complaint, Patriot Marine had a place of business at 550 Pleasant Street, Suite 104, Winthrop, Massachusetts, 02152, and was doing business in the Commonwealth of Massachusetts and within the jurisdiction of this Court through, *inter alia*, the ownership and operation of the towboat M/V OCEAN KING.

10.      In February of 2019, Patriot Marine reorganized and changed the location of its principal office from Winthrop, Massachusetts to New Haven, Connecticut.  Patriot Marine's current principal office is located at 2 Poplar Street, New Haven, Connecticut, 06513. Patriot Marine also maintains corporate records at 256 Marginal Street, East Boston, MA, 02128.

11.      The M/V OCEAN KING, Official Number 259410, is a 199 gross register ton, 95 foot long, commercial towing vessel, built in 1950. Patriot Marine purchased this towing vessel in 2011.

12.     At all material times, the M/V OCEAN KING was owned and operated by Patriot Marine, and was, at all material times, within the jurisdiction of this Court with respect to the matters alleged in this Complaint.

## STATUTORY AND REGULATORY BACKGROUND

13.     OPA Section 1002(a), 33 U.S.C. § 2702(a), provides that: "Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages specified in subsection (b) that result from such incident."

14.     At all material times, the M/V OCEAN KING was a "vessel" within the meaning of OPA, 33 U.S.C. § 2701(37).

15.     Under OPA Section 1017(f)(2), 33 U.S.C. § 2717(f)(2), in any action for recovery of removal costs referred to in OPA Section 2702(b)(1), 33 U.S.C. § 2702(b)(1), the court shall enter a declaratory judgment on liability for removal costs or damages that shall be binding on any subsequent action or actions to recover further removal costs or damages.

16.     OPA Section 1002(b)(2), 33 U.S.C. § 2702(b), provides that the "damages" referred to in Section 1002(a) of OPA, 33 U.S.C. § 2702(a), include damages for injury to, destruction of, or loss of, or loss of use of, natural resources.

17.     OPA Section 1001(20), 33 U.S.C. § 2701(20), provides that "'natural resources' includes land, fish, wildlife, biota, air, water, ground water, drinking water

supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of the exclusive economic zone), any State or local government or Indian tribe, or any foreign government."

18.    Under OPA Section 1006, 33 U.S.C. § 2706, liability for natural resource damages shall be to the United States and/or a State for natural resources belonging to, managed by, controlled by, or appertaining to the United States and/or a State.

19.    The United States is involved in the ongoing work of, and incurring costs related to, assessing injury, destruction, loss, or loss of use of natural resources belonging to, managed by, controlled by, or appertaining to the United States resulting from the unlawful discharge of oil from the M/V OCEAN KING.

<u>**GENERAL ALLEGATIONS**</u>

20.    On January 20, 2018, the M/V OCEAN KING sustained hull damage when it ran aground in Sequetucket Harbor in Harwich, Massachusetts. After the grounding, the M/V OCEAN KING transited from Harwich to Woods Hole, Massachusetts, where it moored at the Woods Hole town dock.

21.    In the morning of January 21, 2018, the M/V OCEAN KING departed Woods Hole. Several hours later, the Coast Guard's National Response Center received a report from a private citizen of a 100 yard by 100 yard sheen, which smelled of motor oil, in the water and on the rocks in Great Harbor, Woods Hole, Massachusetts. Later that day, personnel from the Coast Guard's Marine Safety Detachment Cape Cod arrived on scene to conduct a preliminary assessment and collect oil samples from the spill.

22.     Because no responsible party was found on-scene, Cape Waterman Inc., d/b/a Sea Tow Cape and Islands ("Sea Tow"), was authorized to commence clean-up operations, which began on January 21. Sea Tow continued as the primary responder for clean-up operations in Woods Hole from January 21 until February 15, 2018.

23.     The oil spill, which spread out from the M/V OCEAN KING on the surface of the water, impacted approximately two miles of shoreline within Great Harbor, up to the high tide line.

24.     While the clean-up was ongoing, the Coast Guard investigated the spill and collected oil samples from the M/V OCEAN KING'S bilge water. The oil samples from the M/V OCEAN KING matched the oil samples from the January 2018 Woods Hole spill.

25.     On January 31, 2018, the Coast Guard issued a Notice of Designation to Patriot Marine, formally designating the M/V OCEAN KING as the source of the discharge.

26.     On February 9, 2018, the Coast Guard issued an Administrative Order directing Patriot Marine to dispose of waste materials associated with the clean-up, and opened Federal Project Number (FPN) B18003 to track associated disposal costs.

27.     On February 12, 2018, a Notice of Federal Assumption was issued to Patriot Marine. The Notice of Federal Assumption provided notice that the actions taken by Patriot Marine to abate or remove the oil were unsatisfactory to the Federal On-Scene Coordinator (FOSC), and that the government would assume partial response activities, including proper disposal of the materials used during the clean-up.

6

28.     On February 14, 2018, George Chalos, an attorney for Patriot Marine, sent a letter to Sea Tow, stating "In accordance with the Oil Pollution Act of 1990 (33 USC 2714(c)), Patriot Marine LLC, as owner and operator of the Tug OCEAN KING, has voluntarily accepted responsibility for an accidental discharge of bilge water and oil into the Great Harbor on or about January 21, 2018. Claims for certain uncompensated damages and removal costs may be submitted to Patriot Marine LLC."

29.     On February 15, 2018, pursuant to a contract with Clean Harbors Environmental Services ("Clean Harbors"), the Coast Guard had the oil contaminated materials properly disposed of.

30.     Over the course of the 26 day clean-up period, the Coast Guard incurred $17,545.74 in costs. These costs include use of the Coast Guard's resources for monitoring clean-up activities, oil sampling and analysis, and contract fees associated with hiring Clean Harbors to dispose of oily waste materials. The Fund paid the total removal costs incurred by the Coast Guard.

31.     Sea Tow presented a request for compensation for removal costs related to the incident to Patriot Marine as the Responsible Party. However, Patriot Marine never paid the costs or otherwise settled Sea Tow's claim.

32.     On July 20, 2018, Sea Tow sent a claim to the National Pollution Funds Center ("NPFC") in the amount of $1,088,560.25 for uncompensated removal costs. This claim was received by the NPFC on July 30, 2018.

33.     On February 1, 2019, the Fund paid Sea Tow $1,004,001.35 as full compensation for its claim, denying $84,558.90 as non-compensable costs.

34.     The Fund's oil spill removal costs are as follows:

| | |
|---|---:|
| Coast Guard contract with Clean Harbors | $15,263.00 |
| Coast Guard equipment | $2.24 |
| Coast Guard personnel | $1,254.50 |
| Marine Safety lab | $1,026.00 |
| Sea Tow claim | $1,004,001.35 |
| Total: | $1,021,547.09 |

35.     On May 15, 2019, the NPFC sent a Notice of Potential Liability (NOPL) letter to Patriot Marine, stating that Patriot Marine was responsible for the M/V OCEAN KING pollution incident.

36.     On July 11, 2019, the NPFC sent Patriot Marine an invoice with a due date of August 10, 2019.

37.     As of this date, Patriot Marine has not reimbursed the NPFC for the oil spill removal costs incurred as a result of the M/V OCEAN KING's release of oil into the navigable waters of Great Harbor.

38.     The United States has also incurred and continues to incur natural resource damages, and the cost of assessment of such damages.

39.     The United States' assessment of natural resource damages to natural resources resulting from Defendant's oil discharge is ongoing. Thus, the amount of damages sustained by the United States resulting from the unlawful discharge of oil from M/V OCEAN KING is not yet fully known.

## FIRST CLAIM FOR RELIEF
## OIL POLLUTION ACT OF 1990

40.    The United States incorporates by reference paragraphs 1 through 39 of this Complaint.

41.    Pursuant to OPA, 33 U.S.C. § 2701 *et seq.*, each responsible party for a vessel from which oil is discharged, or which poses the substantial threat of discharge, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone of the United States, is strictly liable for all costs, damages, and/or disbursements specified in the Act.

42.    As owner and operator of the M/V OCEAN KING, Patriot Marine is strictly liable for the oil spill removal costs incurred by the United States through the NPFC.

43.    The NPFC incurred costs in the amount of $1,021,547.09 as a result of paying Sea Tow's claim and reimbursing the Coast Guard for its clean-up expenses.

44.    The actions taken by the Coast Guard and Sea Tow were necessary to prevent, minimize or mitigate the effects of the M/V OCEAN KING oil spill. The clean-up actions were directed by the FOSC or determined to be consistent with the National Contingency Plan.

45.    Pursuant to OPA, and under the circumstances herein, the Defendant is liable to the United States, without limitation, for all the aforesaid costs, damages, and/or disbursements sustained by the United States as a result of the matters alleged in this Complaint. The United States' unreimbursed removal costs to date are $1,021,547.09.

## SECOND CLAIM FOR RELIEF
## OIL POLLUTION ACT OF 1990

46.     The United States incorporates by reference paragraphs 1 through 45 of this Complaint.

47.     Pursuant to OPA, the Fund shall be subrogated to all rights, claims, and causes of action of claimants to whom it has paid compensation.

48.     As a result of the matters alleged in this Complaint, the Fund may incur costs, damages, and/or disbursements by reason of claims for removal costs and damages brought against it under OPA.

49.     Pursuant to OPA, and under the circumstances herein, the Defendant is liable to the United States, without limitation, for all such costs, damages, and/or disbursements which may be sustained by the Fund as a result of the matters alleged in this Complaint.

## THIRD CLAIM FOR RELIEF
## OIL POLLUTION ACT OF 1990

50.     The United States incorporates by reference paragraphs 1 through 49 of this Complaint.

51.     At all times material herein, Defendant was the owner or operator of the M/V OCEAN KING and has been and remains a "responsible party" for a "vessel" within the meaning of OPA, 33 U.S.C. § 2701 *et seq*. The United States may sustain "damages," as that term is defined in 33 U.S.C. § 2702(b)(2), for, *inter alia*, injuries to, destruction of, loss of, or loss of use of natural resources.

52.     An actual controversy exists between the United States and the Defendant.

10

53.     Pursuant to OPA, 33 U.S.C. § 2717(f)(2), the United States is entitled to, and hereby seek, a declaratory judgment that will be binding in any subsequent action or actions that the Defendant is liable for removal costs and for natural resource damages resulting from the discharge of oil from the M/V OCEAN KING.

54.     With respect to natural resource damages, the declaratory judgment to which the United States is entitled under Section 1017(f) of OPA, 33 U.S.C. § 2717(f), as described in the immediately prior Paragraph, is a declaratory judgment on the elements of liability for removal costs that also apply to liability for natural resource damages. This partial declaratory judgement would not address what injury, destruction, loss of, or loss of use of, natural resources has occurred resulting from the M/V OCEAN KING oil spill. Any such injury to, destruction of, loss of, or loss of use of, natural resources and the damages that should be awarded are reserved for determination in a subsequent action or actions.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff United States of America respectfully requests that this Court:

(1) Enter a judgment against the Defendant and in favor of the United States, in the amount of $1,021,547.09, plus all costs incurred by the United States by reason of this claim, including interest (including prejudgment interest), administrative costs, and attorney's fees;

(2) Enter a declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), and the OPA Sections 1002(a), 1005, 1015, and 1017(f)(2), 33 U.S.C. §§ 2702(a), 2705, 2715, and 2717(f)(2), that Defendant is liable, without limitation, for all removal costs and damages, including any injury, destruction, loss of, or loss of use of, natural resources, including all reasonable assessment costs, shown in a subsequent action or actions to recover natural resource damages, resulting from the oil discharge from the M/V OCEAN KING, which will be binding on this action and on any subsequent action or actions to recover removal costs or damages; and

(3) Grant such other relief as may be appropriate.


Dated: February 12, 2021


Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General, Civil Division

/s/ Michelle T. Delemarre
MICHELLE T. DELEMARRE
Senior Admiralty Counsel
United States Department of Justice
Civil Division, Torts Branch
Post Office Box 14271
Washington, DC 20044-4271
Telephone: (202) 616-4037
Facsimile: (202) 616-4002
Email: Michelle.delemarre@usdoj.gov

ORLA M. BRADY
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Post Office Box 14271
Washington, DC 20044-4271
Telephone: (202) 514-0372
Facsimile: (202) 616-4002
Email: Orla.M.Brady@usdoj.gov

JEAN E. WILLIAMS
Acting Assistant Attorney General,
Environment & Natural Resources Division

/s/ Anna Grace
Anna Grace
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Post Office Box 7611
Ben Franklin Station
Washington, D.C. 20010
Phone: (202) 514-4091

Attorneys for the United States

OF COUNSEL:
LCDR SHANNON PRICE
National Pollution Funds Center, U.S. Coast Guard
2703 Martin Luther King Jr. Avenue SE
Washington, DC 20593

BRIAN JUDGE, Chief
Office of Claims and Litigation (CG-LCL)
U.S. Coast Guard Headquarters
2703 Martin Luther King Jr. Ave, SE, Stop 7213
Washington, DC 20593-7213

BRIANNA C. KENNY
Office of the Solicitor, Northeast Region
U.S. Department of the Interior
15 State Street, 8th Floor
Boston, MA 02109-3502