UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PATRIOT MARINE, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 21-CV-10243-AK<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**A. KELLEY, D.J.**

This action arises from Defendant Patriot Marine, LLC's ("Patriot Marine"), oil discharge in the waters of Great Harbor, located off the coast of Woods Hole, Massachusetts, in January 2018. The Commonwealth of Massachusetts (the "Commonwealth") and the United States brought separate actions against Patriot Marine arising out of the oil discharge, respectively 21-CV-11241 (D. Mass. July 30, 2021) and 21-CV-10243 (D. Mass. February 12, 2021). The Commonwealth brought claims for declaratory judgment pursuant to the Oil Pollution Act ("OPA"), 33 U.S.C. Section 2702(a), (Count I), and the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, Mass. Gen. L. Chapter 21E, Section 5 (Count II). [Dkt. 1]. The United States brought two claims under the OPA, 33 U.S.C. Section 2701 (Counts I, II,), and it also sought declaratory judgment under the OPA, 33 U.S.C. Section 2717 (Count III). [Dkt. 1 at 1-2]. The Court consolidated the separate actions.

1

On September 13, 2022, this Court granted declaratory judgment [Dkt. 35] for the United States and the Commonwealth, determining that Patriot Marine, as the party responsible for the oil discharge, was liable under the OPA, 33 U.S.C. Sections 2702(a), 2705, 2715, and 2717(f)(2), for removal costs [id. ¶ 1] and for damages for any injury, destruction, or loss of use of natural resources, including the costs of assessing such damages [id. ¶ 2]. The Court also concluded that Patriot Marine was liable under the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, Mass. Gen. L. Chapter 21E, Section 5 [id. ¶ 3].

The Court's Order left three disputes unresolved: (1) the quantum of removal costs owed to the United States; (2) the quantum of damages for injury to natural resources and the costs of assessing such injury resulting from the oil spill; and (3) whether the limits of liability set forth in the OPA, 33 U.S.C. Section 2704, apply. [Id. ¶ 8]. The United States now moves for summary judgment to resolve whether Patriot Marine may limit its liability under the OPA. [Id. ¶ 8]. For the following reasons, the United States' motion for partial summary judgment [Dkt. 54] is **GRANTED.**

**I.      BACKGROUND**

The parties submitted a joint stipulation of facts [Dkt. 53], some of which Patriot Marine now attempts to dispute. [See Dkt. 53 ¶¶ 6-7; Dkt. 61 ¶¶ 6-7, 10]; see Forcier v. Metro. Life Ins. Co., 469 F.3d 178, 186 (1st Cir. 2006) (stating that "[i]n the absence of fraud, misrepresentation, manifest injustice, or other exceptional circumstances[,] . . . a party who agrees to submit a case on a particular set of stipulated facts cannot later be heard to complain that [it] misjudged what evidence might be beneficial to [its] cause"). The Court notes such disputes below but recounts the facts and draws all reasonable inferences in the light most favorable to Patriot Marine. See Hodgens v. General Dynamics Corp., 144 F.3d 151, 156 (1st Cir. 1998).

Patriot Marine is a limited liability company that engages in construction and dredging. [Dkt. 53 ¶ 1]. On January 20, 2018, Patriot Marine's ship, M/V OCEAN KING, ran aground in Saquatucket Harbor in Harwich, Massachusetts, damaging the vessel's hull. [Id. ¶¶ 6-7]. Although Patriot Marine stipulated to the fact that the M/V OCEAN KING did run aground [Dkt. 53 ¶ 6], it now disputes that fact [Dkt. 61 ¶¶ 7, 8, 10]. Instead, Patriot Marine described the event as "bumping on sand," or a "little shudder," "not a grounding." [Dkt. 61 ¶ 7]. However, Patriot Marine agrees that as a result of the "little shudder," the M/V OCEAN KING began taking on water causing the fluid—which contained oil—in the bilges to rise. [Dkt. 54-5 ¶ 8; Dkt. 61 ¶¶ 8-9]. The M/V OCEAN KING crew informed the owner that the vessel "needed to go to the shipyard for repairs." [Dkt. 54-17 at 7]. The event was not reported to the United States Coast Guard ("Coast Guard") until January 22, 2018. [Dkt. 53 ¶ 8].

On January 20, 2018, the M/V OCEAN KING transited to Woods Hole and moored at the town dock. [Dkt. 53 ¶ 9]. Woods Hole is located at Great Harbor, Massachusetts, which allows access to the Atlantic Ocean and is part of the United States navigable waters. [Id. ¶¶ 10-11]. A Woods Hole resident, Daniel Cojanu, ("Cojanu") was taking a walk in Great Harbor on the morning of January 21, 2018. [Dkt. 61 ¶¶ 15-18]. Although the parties dispute whether Cojanu knew that the "dirty. . . black" liquid he saw in the water was oil, it is undisputed that he took pictures of oiled vegetation that had accumulated at the base of a boat ramp and a sheen covering the surface of the water. [Id. ¶¶ 15-18]. Two crew members of the M/V OCEAN KING also noticed a "discoloration" in the water around the ship. [Dkt. 54-5 ¶¶ 11-12, Dkt. 54-4 ¶ 17, Dkt. 61 ¶ 19]. On January 21, 2018, M/V OCEAN KING departed Woods Hole at approximately 11:00 A.M. [Dkt. 53 ¶ 12]. After the M/V OCEAN KING's departure, an unnamed private citizen reported a 100-yard by 100-yard sheen that smelled of motor oil in

Great Harbor at 1:14 P.M. [Dkt. 54-8]. Cojanu also returned to the scene at 1:45 P.M. to take another picture of the oil spill, depicting black oil on the shoreline rocks. [Dkt. 61 ¶ 23].

Since there was no responsible party on scene, Cape Waterman Inc., d/b/a Sea Tow Cape and Islands ("Sea Tow"), commenced clean-up operations from January 21, 2018, to February 15, 2018. [Dkt. 61 ¶¶ 25-26]. The clean-up generated four containers of oily waste material. [Dkt. 54-1 ¶ 37; Dkt. 61 ¶¶ 36-37]. The oil spill impacted two linear miles of shoreline within Great Harbor. [Dkt. 61 ¶ 27].

On January 22, 2018, the Coast Guard issued a notice to Patriot Marine advising it that it may be responsible for the oil spill at Great Harbor in Woods Hole, Massachusetts. [Dkt. 53 ¶ 13; Dkt. 61 ¶ 29]. The M/V OCEAN KING arrived at Goodison Shipyard in Rhode Island on January 22, 2018, where it awaited haul out. [Dkt. 53 ¶ 14]. While the M/V OCEAN KING was at Goodison Shipyard, the Coast Guard inspected the ship, and found a hole in its hull. [Dkt. 53 ¶¶ 15-16; Dkt. 61 ¶ 31]. On January 31, 2018, the Coast Guard issued a Notice of Designation to Patriot Marine, stating that the M/V OCEAN KING was the source of the oil discharge in Great Harbor, providing that Patriot Marine could deny that designation within 5 days of receipt. [Dkt. 53 ¶ 17; Dkt. 54-15].[1] Patriot Marine did not deny the designation. [Dkt. 61 ¶ 34].

On February 9, 2018, the Coast Guard issued an Administrative Order directing Patriot Marine to submit a written disposal plan to dispose of waste materials associated with the oil spill by February 10, 2018. [Dkt. 53 ¶ 18; Dkt. 54-18]. Patriot Marine did not take any actions or submit a disposal plan, rather it denied responsibility for the spill and encouraged the Coast Guard to "do the necessary [work] without delay should there truly be an imminent and

---

[1] The United States alleges that "Patriot Marine did not take any action to assist with, or take responsibility for, the oil spill response efforts." [Dkt. 54-1 ¶ 35]. Patriot Marine maintains that they e-mailed the Coast Guard "requesting additional information and substantive materials to more fully understand what at that time was a completely unknown, mystery spill." [Dkt. 61 ¶ 35; Dkt. 54-16].

4

substantial threat to the public health or welfare or the environment." [Dkt. 54-1 ¶ 40; Dkt. 61 ¶ 40]. The Coast Guard sent a Notice of Federal Assumption, dated February 12, 2018, stating that Patriot Marine's actions to abate or remove the oil were "unsatisfactory." [Dkt. 53 ¶ 19; Dkt. 54-1 ¶ 43; Dkt. 61 ¶ 43]. On February 14, 2018, Patriot Marine e-mailed the Coast Guard stating that "it appears more likely than not that an unknown, accidental discharge of bilge water occurred during the overnight/early hours of [January 21, 2018] after the vessel sought shelter from heavy weather and docked at Woods Hole Great Harbor." [Dkt. 53 ¶ 20; Dkt. 54-1 ¶ 45; Dkt. 61 ¶ 45].

A Coast Guard Hearing Officer sent Patriot Marine a Preliminary Assessment Letter on October 22, 2018, stating that it appeared to be liable for the following violations of federal law: (1) the discharge of oil or a hazardous substance into the navigable waters of the United States, adjoining shoreline, or contiguous zone, 33 U.S.C. Sections 1321(b)(2), (3), failure to immediately notify the nearest Coast Guard office of a hazardous condition, 33 C.F.R. Section 160.216. [Dkt. 54-22 at 3; Dkt. 61 ¶ 48]. Patriot Marine responded on February 26, 2019, stating that although the M/V OCEAN KING's crew observed a "discoloration" in the water, it did not observe any petroleum oil or sheen, and that therefore, the grounding had not resulted in a "hazardous condition" to report to the Coast Guard. [Dkt 54-23; Dkt. 53 ¶ 24; Dkt. 54-1 ¶ 51; Dkt. 61 ¶¶ 50-51].

The Coast Guard Hearing Officer sent Patriot Marine a Final Determination letter on March 13, 2019, stating that it violated both counts, and specifically that Patriot Marine was required to report "bump and go" groundings regardless of whether there was obvious damage to the vessel. [Dkt. 54-17], see 33 C.F.R. § 160.216. The Coast Guard ordered Patriot Marine to pay a fine, which it paid instead of pursuing an appeal. [Dkt. 53 ¶ 26; Dkt. 61 ¶ 57].

## II. LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (citing Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment may be granted when the record, viewed in the light most favorable to the non-moving party, presents no "genuine issue of material fact," and the moving party is entitled to judgment as a matter of law. Paul v. Murphy, 948 F.3d 42, 49 (1st Cir. 2020) (citation omitted). The Court must consider (1) whether a factual dispute exists; (2) whether the factual dispute is "genuine," such that a "reasonable fact-finder could return a verdict for the nonmoving party on the basis of the evidence;" and (3) whether a fact genuinely in dispute is material, such that it "might affect the outcome of the suit under the applicable substantive law." Scott v. Sulzer Carbomedics, Inc., 141 F. Supp. 2d 154, 170 (D. Mass. 2001); see also Napier v. F/V DEESIE, Inc., 454 F.3d 61, 66 (1st Cir. 2006). Courts must evaluate "the record and [draw] all reasonable inferences therefrom in the light most favorable to the non-moving parties." Est. of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010) (citing Houlton Citizens' Coal. V. Town of Houlton, 175 F.3d 178, 183–84 (1st Cir. 1999)). A non-moving party may "defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Paul, 948 F.3d at 49 (citation omitted).

## III. DISCUSSION

The United States asserts that Patriot Marine cannot invoke 33 U.S.C. Section 2704, which allows a responsible party to limit its liability for damages and removal costs from an oil spill. The OPA does not allow a responsible party to limit its liability if it "fails or refuses . . . to report the incident as required by law and [it] knows or has reason to know of the incident." 33

6

U.S.C. § 2704(c)(2)(A).  The United States argues that Patriot Marine cannot show compliance with 33 U.S.C. Section 2704(c)(2)(A), and that it therefore is not entitled to limit its liability under the OPA because it "(1) failed to immediately report the incident (the grounding) as required by law, (2) failed to timely report the discoloration and sheening in the waters in the vicinity of the M/V OCEAN KING, and (3) failed, without sufficient cause, to comply with the Coast Guard's Administrative Order requiring submission of a plan for removal of the oily waste that had been generated in the course of clean-up." [Dkt. 54-24 at 14].  Additionally, the United States contends that since the Coast Guard Hearing Officer already determined that Patriot Marine failed to immediately report the grounding, a hazardous condition, in violation of federal law, 33 C.F.R. Section 160.216, that it cannot re-litigate this issue in this forum.  [Id. at 15-16].

### A.  Liability Under the OPA

The OPA provides that "each responsible party for a vessel . . . from which oil is discharged, . . . into . . . the navigable waters or adjoining shorelines . . . is liable for the removal costs and damages . . . that result from such incident."  33 U.S.C. § 2702(a).  "In 1989, the oil tanker Exxon Valdez ran aground in the Prince William Sound on the Alaska coast, causing the largest oil spill at that point in U.S. history.  Congress enacted the OPA in response."  Ironshore Specialty Ins. Co. v. United States, 871 F.3d 131, 136 (1st Cir. 2017) (citing Metlife Capital Corp. v. M/V Emily S., 132 F.3d 818, 820 (1st Cir. 1997)).  The OPA "impos[es] strict liability for pollution removal costs and damages on the 'responsible party' for a vessel . . . from which oil is discharged."  Ironshore Specialty Ins. Co., 871 F.3d at 136 (citation and internal quotation marks omitted).

The United States took funds from the National Pollution Funds Center ("NPFC") to compensate Sea Tow for the clean-up.  [Dkt. 54-1 ¶¶ 25-26].  The OPA authorizes the United

States to bring an action to recover "any compensation paid by [NPFC] to any claimant," and therefore allows it to pursue a claim against Patriot Marine for the $1,021,547 it paid to Sea Tow. See 33 U.S.C. § 2715(c).

The OPA provides three defenses to liability if the oil spill was caused "solely by," "(1) an act of God; (2) an act of war; [or by] (3) an act or omission of a third party, other than an employee or agent of the responsible party or a third party whose act or omission occurs in connection with any contractual relationship with the responsible party. . . ." 33 U.S.C. § 2703(a).  A responsible party may also limit its liability to statutory amounts based on the type of vessel and its tonnage.  See 33 U.S.C. §§ 2704(a)(1)(A)-(C).  But these limits are not available to responsible parties if "the incident was proximately caused by—(A) gross negligence or willful misconduct of, or (B) the violation of an applicable Federal safety, construction, or operating regulation by, the responsible party," or if the responsible party fails or refuses: "(A) to report the incident as required by law and the responsible party knows or has reason to know of the incident; (B) to provide all reasonable cooperation and assistance requested by a responsible official in connection with removal activities; or (C) without sufficient cause, to comply with an order issued under subsection (c) or (e) of section 311 of the Federal Water Pollution Control Act (33 U.S.C. 1321), as amended by this Act, or the Intervention on the High Seas Act (33 U.S.C. 1471 et seq.)." See 33 U.S.C. §§ 2704(c)(1-2) (stating that failure to comply with any of these provisions precludes Patriot Marine from limiting its liability under 33 U.S.C. Section 2703(a)).

The responsible party, "must demonstrate that it is entitled to a limitation of liability." Water Quality Ins. Syndicate v. United States, 632 F. Supp. 2d 108, 114 (D. Mass. 2009) (citing Caricieri v. Salazar, 555 U.S. 379, 391-93 (2009)).  Therefore, it is Patriot Marine's burden to prove its entitlement to limitation of liability under the OPA.  33 U.S.C. Section 2703(a).

**B. Res Judicata**

The United States first asserts that Patriot Marine's failure to report the grounding of the M/V OCEAN KING was adjudicated by the Coast Guard and therefore cannot be relitigated in this forum. If the Coast Guard proceedings here meet the standard for the application of *res judicata*, the Court will not relitigate the issue. See Rios-Pineiro v. United States, 713 F.3d 688, 692 (1st Cir. 2013) (stating that issue preclusion is a "threshold matter," and that "[i]f the administrative agency is acting in a judicial capacity . . . [and] the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose"); see also Stilianos v. Board of Trustees of Mass. Maritime Academy, No. 83-0411-S, 1983 LEXIS 13539, at *3 (D. Mass. Sept. 22, 1983) (stating that since *res judicata* will bar judicial review if there has been a judgment on the merits, courts should consider this issue first).

The Coast Guard Hearing Officer sent Patriot Marine a Preliminary Assessment Letter on October 22, 2018, stating that it appeared to be liable for the following violations of federal law: "1) the discharge of oil or a hazardous substance into the navigable waters of the United States, adjoining shoreline, or contiguous zone, 33 U.S.C. § 1321(b)(3), and 2) failure to immediately notify the nearest Coast Guard office of a hazardous condition, 33 C.F.R. § 160.216." [Dkt. 53 ¶ 22]. Patriot Marine, represented by counsel, responded on February 26, 2019. Instead of requesting a hearing, Patriot Marine proceeded on the evidentiary record, [Dkt. 54-17 at 1], and the Hearing Officer issued a Final Determination, finding that Patriot Marine was liable for both violations of federal law.

"[D]ecisions of administrative agencies are entitled to *res judicata* effect when the agency acted in a judicial capacity." Aunyx Corp. v. Canon U.S.A. Inc., 978 F.2d 3, 7 (1st Cir. 1992). "[A]n administrative agency is acting in a judicial capacity" when it "resolves disputed

issues of fact properly before it[,] which the parties have had an adequate opportunity to litigate." Universal Ins. Co. v. Office of the Ins. Comm'r., 755 F.3d 34, 38 (1st Cir. 2014).

The United States also must establish four elements to establish issue preclusion: "(1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment." O'Connell v. Fed. Ins. Co., 484 F. Supp. 2d 223, 225-26 (D. Mass. 2007) (quoting Grella v. Salem Five Cent. Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994)).

The United States meets all four elements. First, the Coast Guard Hearing Officer considered the same issue presented to the Court: whether Patriot Marine failed to immediately report an incident that it was required to report by law to the Coast Guard. [Dkt. 54-17]. The Coast Guard Hearing Officer concluded that on January 20, 2018, the M/V OCEAN KING was involved in a "bump and go" grounding occurrence, constituting a hazardous condition required to be reported pursuant to a federal regulation, 33 C.F.R. Section 160.216(a).[2] [Id. at 7]. The Hearing Officer also stated that Patriot Marine did not dispute that a "bump and go" grounding occurred on January 20, 2018. [Id.] The Hearing Officer also cited the Navigation and Vessel Inspection Circular ("NVIC"), a handbook which provides guidance on the enforcement and compliance with federal marine safety regulations, which provides that "bump and go" groundings constitute hazardous conditions under 33 C.F.R. Section 160.216(a). Additionally, the Hearing Officer stated that "the crew was fully aware" that after the "bump and go" occurred, the "vessel needed to go to the shipyard for repairs." [Id.]; see 33 C.F.R. § 160.202 (stating that

---

[2] See also 33 CFR § 160.202 (stating that "[h]azardous [c]ondition means any condition that *may* [emphasis added] affect the safety of any vessel, bridge, structure, or shore area or the environmental quality of any port, harbor, or navigable waterway in the United States. It may, but need not, involve collision, allision, fire, explosion, grounding, leaking, damage, injury or illness of a person aboard, or manning-shortage").

.

"any condition that *may* [emphasis added] adversely affect the safety of any vessel" constitutes a hazardous condition).

Second, this issue was actually litigated. Patriot Marine was represented by counsel and submitted evidence that its failure to report the "bump and go" grounding did not constitute a violation. [Dkt. 54-22]. Patriot Marine also had the opportunity to request a hearing in front of the Hearing Officer, but instead chose to proceed on its papers and documentary record. [Dkt. 54-17 at 1]. See Seetharaman v. Stone & Webster, Inc., No. 05-11105, 2009 WL 1364706, at *1-3 (D. Mass. May 11, 2009) (stating that plaintiff had the opportunity to "actually litigate[]" her claim before an agency, where the administrative law judge took documentary evidence and held a hearing with both parties represented by counsel).

Third, the Hearing Officer issued a Final Determination [Dkt. 54-17], finding that Patriot Marine failed to notify the Coast Guard of a hazardous condition, see 33 C.F.R. Section 160.216, which constitutes a valid and binding final judgment.

Fourth, the determination of the issue must have been essential to the judgment. The Hearing Officer had to determine whether Patriot Marine violated 33 C.F.R. Section 160.216(a), which requires the owner of a vessel to "immediately notify the nearest" Coast Guard office of any "hazardous condition." Hazardous condition is defined as:

> any condition that may adversely affect the safety of any vessel, bridge, structure, or shore area or the environmental quality of any port, harbor, or navigable waterway of the United States. It may, but need not, involve collision, allision, fire, explosion, grounding, leaking, damage, injury or illness of a person aboard, or manning-shortage.

33 C.F.R. § 160.202. This is the exact same issue before the Court now. Here, the Court must determine whether Patriot Marine failed to "report the incident as required by law," which would preclude Patriot Marine's limitation of liability here, see 33 U.S.C. Sections 2704(c)(1-2). This

is precisely what the Hearing Officer decided when determining that Patriot Marine violated 33 C.F.R. Section 160.216.

The Court, therefore, will not re-litigate this issue. The Hearing Officer already determined that Patriot Marine violated federal law by failing to report the January 20, 2018, incident to the Coast Guard, 33 U.S.C. § 2704(c)(2)(A), and therefore does not qualify to limit its liability pursuant to 33 U.S.C. Section 2703(a). Even if the Court determines *res judicata* does not strictly apply, Patriot Marine stipulated to the fact that the M/V OCEAN KING did run aground. [Dkt. 53 ¶ 6]. Although Patriot Marine now disputes that fact [Dkt. 61 ¶¶ 6-8], the Court will not allow Patriot Marine to change stipulated facts because they are not favorable to its case. See Forcier v. Metro. Life Ins. Co., 469 F.3d 178, 186 (1st Cir. 2006) (stating that "[i]n the absence of fraud, misrepresentation, manifest injustice, or other exceptional circumstances[,] . . . a party who agrees to submit a case on a particular set of stipulated facts cannot later be heard to complain that [it] misjudged what evidence might be beneficial to [its] cause"). Additionally, Patriot Marine still describes the event as "bumping on sand" or a "little shudder" [Dkt. 61 at ¶ 7], which still invokes a reporting requirement under federal law, and therefore, still precludes Patriot Marine from limiting its liability under 33 U.S.C. Section 2703(a). See 33 C.F.R. §§ 160.202, 160.216.

## IV.    CONCLUSION

For the foregoing reasons, the United States' partial motion for summary judgment [Dkt. 54] is **GRANTED**.

**SO ORDERED.**

Dated: April 6, 2023                                                  /s/ Angel Kelley
                                                                      Hon. Angel Kelley
                                                                      United States District Judge